NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---------------------------------------- :
TRACY GARDENSHIRE,                       :
                                         :
             Plaintiff,                  :   Civil No. 06-1188 (RBK)
                                         :
        v.                               :   **OPINION**
                                         :
COMMISSIONER OF SOCIAL                   :
SECURITY,                                :
                                         :
             Defendant.                  :
---------------------------------------- :

**KUGLER**, United States District Judge:

    This matter comes before the Court upon appeal by Plaintiff Tracy E. Gardenshire ("Gardenshire"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, this case is remanded to the Commissioner for further findings.

**I.  BACKGROUND**

    Gardenshire, a thirty-one year old woman, alleges that she is disabled with an onset date of April 1, 1996 (R. at 51) due to a severe mental impairment that causes Gardenshire to engage in self-mutilation (R. at 78, 444). Gardenshire also alleges that she suffers from depression, fatigue and panic attacks. (R. at

78, 445-46.) Finally, Gardenshire alleges that she suffers from a degenerative bone disease in her neck that makes it difficult for her to hold her head up and causes migraine headaches. (R. at 449.) She has a high school education (R. at 23), and she has no past relevant work (R. at 23).

Dr. Lawrence P. Clinton, a psychiatrist, treated Gardenshire since 1996 for major depression, anxiety, panic disorder, self-mutilation, suicidal ideations, and borderline personality disorder. (R. at 153-55.) As of January 2003, Dr. Clinton saw Gardenshire every four to six weeks. (R. at 154.) Dr. Clinton noted that, at that time, Gardenshire "ha[d] difficulty on a daily basis," but "[wa]s under fairly good control with" her daily medications, which included Paxil, Risperdal, Serquel, and Xanax. (R. at 154.) Dr. Clinton further noted that Gardenshire suffered from mood swings, and that Dr. Clinton contemplated a diagnosis of bipolar disorder. (R. at 154.) However, at that time, Dr. Clinton indicated that Gardenshire's condition was "much worse than that." (R. at 154.) Dr. Clinton also noted that Gardenshire was "easily disturbed by other people" and "vulnerable towards angry outbursts and irritability." (R. at 154.) Dr. Clinton stated that Gardenshire would have difficulty adjusting to a work situation. (R. at 154.)

In his most recent notation in the record, dated August 2004, Dr. Clinton notes that financial difficulties prevented

Gardenshire from seeing Dr. Clinton regularly.[1] (R. at 416.) In that same letter, Dr. Clinton noted that Gardenshire's anxiety spells continued, as well as her mood swings. (R. at 416.) Moreover, Dr. Clinton noted that the reason Gardenshire returned to him was because of increasing difficulty with nerves and mood swings, and that she continued "to cut" and to "scratch[] at herself." (R. at 417.) Dr. Clinton stated that he changed Gardenshire's diagnosis from "major depression with panic disorder" to "bipolar disorder of an atypical nature," and that this problem is genetic, and will affect Gardenshire for the remainder of her life. (R. at 416.) Dr. Clinton stated that as of August 2004, Gardenshire weighed 381 pounds, and at 5'8", he classified this as "morbidly obese." (R. at 417.) Finally, Dr. Clinton noted that Gardenshire was unsuccessful at holding a job and "managing on her own," both of which he attributed to her mental condition. (R. at 416.)

Gardenshire's family physician, Dr. Douglas Hargrave, treated Gardenshire since 1991. (R. at 326.) Dr. Hargrave documented Gardenshire's migraines (R. at 329), depression (R. at 333), degenerative neck problem (R. at 383), as well as

---

[1] In the ALJ's decision denying benefits, the ALJ states that as of August 2004, Dr. Clinton noted that he "he had only seen the claimant three times" in that calendar year. (R. at 19.) The ALJ neglected to mention that Dr. Clinton further noted that her infrequent visitations were due to financial constraints. (R. at 416.) This type of inaccuracy in framing the issue is prevalent in the ALJ's decision.

3

persistent stomach ailments, including frequent vomiting and diarrhea (R. at 364).

Gardenshire filed for Supplemental Security Income based on her disability on December 27, 2002. (R. at 18.) The Social Security Administration ("SSA") denied her claim on March 4, 2003, and Gardenshire appealed. Gardenshire filed a Request for Reconsideration on March 19, 2003, which was denied on July 1, 2003. Gardenshire then requested a hearing on July 15, 2003, which took place on August 12, 2004. (R. at 18.)[2]

ALJ Paula F. Garrety denied Gardenshire's appeal on September 8, 2004. In her opinion, ALJ Garrety stated that Dr. Clinton's notes do not support his own opinion that Gardenshire is unemployable. During the hearing before the ALJ, the vocational expert identified a Residual Functioning Capacity ("RFC") that would permit a restricted range of light work. (R. at 455.) However, taking into account Dr. Clinton's diagnoses and notes, namely Gardenshire's social anxiety, the vocational expert stated, "If she's that severely limited she would find it

---

[2] The record demonstrates that at the conclusion of the hearing, ALJ Garrety granted Gardenshire's request to leave the record open for thirty additional days to permit additional supporting medical records from Gardenshire's physicians. (R. at 457.) This resulted in the record remaining open until September 14, 2004. In the brief to this Court, Gardenshire's counsel alleges that as of September 14, 2004, ALJ Garrety had not received the additional records. Gardenshire's counsel allegedly contacted ALJ Garrety, and received a two week extension. However, ALJ Garrety issued her opinion on September 8, 2004.

4

difficult to maintain employment." (R. at 19-20.) ALJ Garrety also noted Gardenshire's morbid obesity and degenerative neck disease. (R. at 20.) ALJ Garrety stated that Gardenshire's subjective complaints "suggest a greater level of severity than is shown by, or could reasonably be expected from the evidence." (R. at 20.)

Gardenshire appealed this decision to the Appeals Council, which the Council denied on February 17, 2006. Gardenshire then appealed to this Court on March 15, 2006. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams

v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created

by countervailing evidence." <u>Wallace v. Secretary of Health and Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing <u>Kent</u>, 710 F.2d 110, 114 (3d Cir. 1983)).

### III. Discussion

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's RFC and analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts

7

to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." <u>Jones</u>, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Here, ALJ Garrety determined that Gardenshire did not engage in a substantial gainful activity since the onset of her "alleged disability." Next, ALJ Garrety determined that Gardenshire's depressive disorder is a severe impairment, based on the Regulations. Next, the ALJ determined that this impairment does not meet or medically equal one of the listed impairments. At step four, the ALJ found that Gardenshire's allegations regarding her limitations were not "totally credible," and accordingly, Gardenshire has an RFC to perform "low stress work involving limited contact with the public and co-workers, and simple repetitive 1, 2 step tasks in work that is self-paced." Finally, the ALJ determined that Gardenshire has no past relevant work, but relied on the portion of the vocational expert's testimony that did not take into account Dr. Clinton's diagnoses. In that portion, the vocational expert opined that there were significant numbers of jobs in the national economy which Gardenshire can perform.

The Commissioner argues that substantial evidence in the record supports the ALJ's findings and therefore, this Court must affirm the Commissioner's decision. However, this Court's review

8

of the record demonstrates otherwise. It appears that the ALJ erred in applying the relevant legal standards to the facts of this case. More specifically, the ALJ improperly "supplanted the opinions of [Gardenshire's] treating and examining physicians with [the ALJ's] personal observation and speculation." See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ's "subsequent reliance on the testimony of a vocational expert that did not consider this evidence, therefore, does not meet the substantiality test." See id.

### A. Dr. Clinton

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Id. (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). "In choosing to reject the treating physician's assessment, an ALJ . . . may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429).

ALJ Garrety rejected Dr. Clinton's opinion, which appears repeatedly in Gardenshire's treatment records, that Gardenshire is incapable of maintaining employment. Like the ALJ in Morales,

9

ALJ Garrety's refusal to credit the opinion of Dr. Clinton, the treating physician, was not based on objective medical evidence, but rather ALJ Garrety's personal observations developed from the hearing and from select anecdotes in the treatment records. For example, in dismissing Dr. Clinton's opinions regarding Gardenshire's ability to maintain employment, ALJ Garrety states, "Although she claims she does not like to be around people, she does get together with friends fairly frequently and does not demonstrate any signs of pathological withdrawal or social isolation." ALJ Garrety came to this decision after reading that Gardenshire gets together with a "small group of friends" once or twice a week, and after observing Gardenshire at the hearing. ALJ Garrety is not a psychiatrist, nor is she trained in diagnosing social anxiety disorders. It is unclear how this information permitted the ALJ to overrule the opinion of Gardenshire's longtime treating psychiatrist.

In addition, the ALJ used carefully selected and arbitrary portions of Dr. Clinton's records to support the ALJ's conclusions that Dr. Clinton's treatment records were "inconsistent" and that Gardenshire's condition was not deteriorating. In particular, ALJ Garrety did not always cite the most recent records. As previously noted, in his most recent correspondence, Dr. Clinton stated that Gardenshire experienced "increasing difficulty with nerves and mood swings," and that she

10

continued to self-mutilate. Also in that August 2004 correspondence, Dr. Clinton iterated his opinion that her mental condition makes it difficult for Gardenshire to maintain employment.

### B. Dr. Hargrave

The Third Circuit requires an ALJ to "evaluate adequately all relevant evidence and to explain the basis of [her] conclusions." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). ALJ Garrety's six word discussion of Dr. Hargrave's voluminous treatment records is hardly an adequate evaluation under the Third Circuit's standard.

In her decision denying Gardenshire's claim for DBI, ALJ Garrety failed to adequately consider the medical records of Dr. Hargrave, which encompass no less than ninety pages of the administrative record. The Commissioner asserts that the ALJ "considered" this evidence because in the ALJ's opinion denying benefits, with regard to Gardenshire's various physical ailments, the ALJ stated, "Extensive diagnostic studies have been normal," and the ALJ cited the exhibit containing Dr. Hargrave's records. However, given the extensive nature of these medical records, and the fact that much of this evidence supports Gardenshire's contentions regarding the combined effect of her ailments and alleged resulting disability, a cursory citation to the record without adequately addressing the contents of the records is

11

insufficient.

**IV. Conclusion**

Because ALJ Garrety's rejection of Dr. Clinton's opinion was not based on objective medical evidence, and because ALJ Garrety failed to adequately evaluate Dr. Hargrave's medical records, the ALJ's determination of Gardenshire's RFC is not based on substantial evidence. The ALJ is not permitted to substitute her lay opinion, or her own credibility judgments, for those of treating physicians. Therefore, ALJ Garrety's reliance on selective portions of the vocational expert's testimony, which failed to take into account the full medical record, is misplaced.

For the foregoing reasons, this Court remands this decision to the Commissioner for further proceedings consistent with this Opinion.

Dated: 3/13/2007                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge